IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E. LYNN SCHOENMANN, | No. C 10-03989 CRB |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** |
| v. | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | |
| Defendant. | |

This is a consolidated action by E. Lynn Shoenmann (the "Trustee"), Chapter 7 Trustee of United Commercial Bank Holdings, Inc. ("UCBH"), to recover from the FDIC in both its corporate ("FDIC-C") and receivership ("FDIC-R") capacities over $117 million in assets that were allegedly fraudulently transferred to United Commercial Bank ("UCB" or the "Bank"). The Trustee's central claim is that federal banking regulators, rather than close UCB when it became insolvent, instead kept it open to facilitate downstream transfers of UCBH's assets to UCB for the purpose of reducing the FDIC's losses when UCB ultimately failed. The Trustee seeks recovery of the transferred assets under the Bankruptcy Code, California Civil Code, and Federal Torts Claims Act. FDIC-R and FDIC-C have moved to dismiss all claims save for the tax refund and payment claims in Counts I and IX.

The Motions are GRANTED in part and DENIED in part as follows. The Court grants FDIC-C's and FDIC-R's motions to dismiss the Trustee's constructive fraud and

conversion claims. The Court grants FDIC-R's motion to dismiss the Trustee's request that the Court void her disallowed receivership claim and order the FDIC-R to reconsider such claim. However, the Court denies FDIC-C's and FDIC-R's motions to dismiss the Trustee's actual fraud claims.

## I.  BACKGROUND

Prior to its filing for bankruptcy, UCBH conducted its principal business through UCB, its wholly owned banking subsidiary. Compl. (Dkt. 1) ¶ 3. As of March 16, 2009, the bulk (99.5%) of UCBH's assets was comprised of its $1.62 billion investment in UCB. Id. ¶ 24. In 2009, UCB suffered from severe financial difficulties caused by overly aggressive expansion, management failures and an inability to raise capital. Id. ¶ 12. As a result, on November 6, 2009, the California Department of Financial Institutions ("CDFI") closed UCB and appointed FDIC-R as its receiver.[1] Id. ¶ 63. Subsequently, the FDIC-R and FDIC-C[2] entered into a purchase and assumption agreement dated November 6, 2009 with East West Bank; East West Bank purchased certain assets and assumed various liabilities of UCB. Id. ¶ 64. Due to the Bank's closure, UCBH became insolvent and filed for bankruptcy on November 24, 2009. Id. ¶ 66.

### A.  The Rise and Fall of UCB

"UCB was founded as United Federal Savings and Loan Association in 1974 to serve the financial needs of San Francisco's Chinese community." Loss Review (Dkt. 24-1)[3] at 9. "As the Chinese-American population grew and expanded throughout California, the institution became United Savings Bank, Federal Savings Bank, enabling it to provide statewide banking services." Id. "In 1998, to reflect its rapidly growing focus on

---

[1] Thus, by operation of law, FDIC-R succeeded to "all rights, titles, powers and privileges" of UCB "and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A).

[2] FDIC-C is an independent agency of the United States government that, among other responsibilities, acts as the regulator of insured depository institutions and as the insurer of deposits. Compl. ¶ 2.

[3] Pursuant to section 38(k) of the Federal Deposit Insurance Act, the Office of the Inspector General issued a report ("material loss review") that outlined the causes of UCB's failure and evaluated the FDIC's supervision of UCB.

United States District Court
For the Northern District of California

2

commercial banking activities, the institution converted its charter from a savings and loan [bank] regulated by the Office of Thrift Supervision (OTS) to a commercial bank regulated by the FDIC, and was renamed UCB." Id.

From 2002 to 2007, UCB initiated a strategic plan to grow its assets to more than $10 billion, in part, to meet foreign criteria to purchase a bank in the People's Republic of China. Id. at 10. "UCB achieved this goal when its assets exceeded $10 billion in the fourth quarter of 2006." Id. In 2007, "UCB became the first state nonmember bank in the United States to wholly own a bank in the People's Republic of China when it purchased Business Development Bank Limited, since renamed United Commercial Bank (China) Limited (UCBC)." Id.

The desire to rapidly expand, however, also planted the seeds for UCB's ultimate demise. "The primary reason for UCB's failure was inadequate oversight by the Board of Directors and management." Id. at 12. "In particular, UCB's Board and management failed to control the risks associated with the institution's rapid expansion, which began in 2002." Id. "Further, management controls were insufficient to prevent the occurrence of inaccuracies, omissions, and misrepresentations that affected key UCB financial data." Id. On April 6, 2009, the CDFI and the FDIC issued a joint "Report of Targeted Review" of UCB. Compl. ¶ 10. The "Report of Targeted Review" suggests that bank examiners, at that time, identified significant financial difficulties facing UCB. Id. ¶¶ 12-14

The Trustee alleges that as of April 6, 2009, the FDIC and CDFI knew that UCB was critically undercapitalized and as a practical matter, insolvent. Id. ¶ 13. On April 20, 2009 the FDIC sent a letter to UCB notifying it that its classification had been downgraded to a composite "3" rating, which designated the Bank as "troubled," and informed the Bank that its ability to issue debt had been restricted.[4] Id. ¶ 19.

On June 30, 2009, the FDIC and CDFI issued a follow-up report to UCB and UCBH summarizing the April 2009 targeted review results and announcing that a cease and desist

---

[4] On November 14, 2008, UCBH received $298.7 million in TARP funds and subsequently down streamed the money to UCB. Loss Review at 11. The Treasury lost this investment when UCB closed on November 6, 2009. Id. UCB was the first depository institution to lose TARP funds. Id.

3

order would be issued. Id. ¶ 20. The Trustee alleges that as of June 30, 2009, because of previous orders, the FDIC and CDFI were effectively in control of both UCB and UCBH, and dictating how they should or should not operate. Id. ¶ 21.

In August 2009, the FDIC and CDFI prepared a draft targeted review report which neither UCB or UCBH received. Id. ¶ 31. As reported in the Office of the Inspector General's ("OIG") Material Loss Review of UCB:

> UCB's efforts to raise sufficient capital in 2009 were significantly hampered due to the investigation's findings and UCBH's inability to file accurate financial statements, were ultimately unsuccessful. The August 2009 targeted review draft report estimated that an $800 million to $1.1 billion capital injection, or more, was needed to return UCB to a Well Capitalized status. <u>The draft review found that UCBH was no longer able to provide support to UCB, as it had negligible cash, no access to equity markets, and was subject to significant shareholder lawsuits.</u>

Loss Review at 20 (emphasis added). On August 11, 2009, the FDIC sent UCB a "Prompt Corrective Action" notification letter informing it of its undercapitalized status and requiring it to develop a capital restoration plan. Compl. ¶ 34.

The Trustee alleges that "in the face of the bank regulators' April 2009 'Targeted Review,' their June 2009 confidential report and the FDIC's August 11, 2009 'Prompt Corrective Action' notification letter requiring UCBH to inject additional capital into the Bank, as well as additional pressure -- UCBH downstreamed $50 million to the Bank" on August 31, 2009. Id. ¶ 35. The expressed intent of this capital infusion was to "improve the pro-forma total risk-based capital ratio at UCB to 10.14% as of June 30, 2009." Id.

On September 3, 2009, four days after UCBH's capital infusion into UCB, the CDFI and FDIC issued a formal "Order to Cease and Desist" to UCB. Id. ¶ 37. The OIG's Material Loss Review states:

> A joint FDIC/CDFI Cease and Desist Order was issued to address issues identified at the April 2009 targeted review. The Order required UCB to cease and desist from engaging in unsafe or unsound banking and required UCB, by December 31, 2009, to achieve and maintain adequate capital levels. The Order also required UCB to develop and adopt an adequate capital plan within 60 days of the date of the Order.

4

United States District Court
For the Northern District of California

Loss Review at 25. The Trustee alleges that UCB had no choice but to consent to the "Order to Cease and Desist," and that the Order required the Bank, and its institution-affiliated parties, namely UCBH, to also cease and desist from a number of practices and violations of law. Compl. ¶ 39. The Trustee further alleges that on September 9, 2009, the FDIC put more pressure on UCBH to infuse capital into UCB by requiring it to sign a written agreement to develop a plan to raise capital within 60 days. Id. ¶ 43. Also on this date, UCB's board minutes indicate that the "FDIC Dallas resolution team" was going to arrive soon at the UCBH and Bank headquarters in downtown San Francisco to "get a download of information."[5] Id. ¶ 46.

On October 29, 2009, UCBH received a wire transfer from the IRS for a tax refund in the amount of $67 million.[6] Id. ¶ 53. The Trustee alleges that the tax refund was the property of UCBH. Id. ¶ 54. On the same day UCBH received the $67 million federal tax refund, the FDIC issued another "Prompt Corrective Order" to UCBH, informing it of the Bank's significantly undercapitalized status and encouraging it to secure more capital. Id. ¶ 56. On October 30, 2009 UCBH downstreamed $58.7 million of its tax refund to the Bank. Id. ¶ 57.

On November 2, 2009, the FDIC sent UCB another "Prompt Corrective Action" stating that it had rejected UCB's September capital contribution plan because it contained unrealistic and unobtainable goals. Id. ¶ 59. The "Prompt Corrective Action" further directed UCB to secure more capital and submit a revised capital restoration plan. Id. On November 6, 2009, UCBH down streamed $7.2 million of the remaining tax refund money to the Bank. Id. ¶ 60. On the same day, the CDFI closed UCB and appointed FDIC-R as its receiver. Id. ¶¶ 62-63.

---

[5] The FDIC's Dallas resolution team was engaged in Resolution Management, namely, beginning the physical process of taking over a bank, putting it into receivership and selling its assets. Compl. ¶ 47. It is unclear whether or when the Dallas resolution team arrived in San Francisco and whether UCBH and the Bank used the same office as their headquarters.

[6] UCBH, the Bank and other direct and indirect subsidiaries of UCBH are parties to an inter-company tax agreement. Compl. ¶ 50. The Trustee alleges that the terms of the tax agreement are such that any tax refund from the IRS is the property of UCBH. Id. ¶ 51.

5

On November 24, 2009, UCBH filed for Chapter 7 bankruptcy in the Northern District of California. Id. ¶ 66.

### B. This Litigation

On February 10, 2010, the Trustee asserted claims against the receivership by filing a proof of claim. Id. ¶ 69. The Trustee's proof of claim alleged that FDIC-R and FDIC-C "thwarted" her access to books and records, making it difficult to compile and present a full proof of claim. Id. ¶ 70. Similarly, the Trustee asserts that she filed her Complaint without access to records held by the FDIC. Id. ¶ 72.

In her proof of claim, the Trustee asserted, among other claims, an unliquidated claim against FDIC-R and the Bank on account of any and all taxes paid by UCBH on behalf of UCB. Id. ¶ 74. The Trustee alleges that on account of UCBH's payments of taxes, pursuant to the Tax Agreement between UCB and UCBH, UCBH is or will be entitled to somewhere between $9 to $16 million in tax refunds. Id. ¶ 76. FDIC-R has not moved to dismiss this claim but asserts that it is without merit. FDIC-R Mot. (Dkt. 24) at 3. The FDIC-R denied the Trustee's proof of claim with one sentence: "[the] claim has not been proven to the satisfaction of the Receiver." Id. ¶ 102. FDIC-R's notice of denial instructed the Trustee to file a lawsuit if she disagreed with the disallowance of her claims. Id. ¶ 114. The Trustee filed the present action to seek de novo review of her proof of claim.

In this action, the Trustee has asserted ten claims for relief. In Count I, pursuant to 12 U.S.C. § 1821(d)(6)(A), the Trustee seeks de novo review of her claims in the proof of claim.[7] Id. ¶¶ 116-118. In Count II, the Trustee seeks a declaration that the FDIC-R's disallowance of her proof of claim is void because the FDIC-R rejected the claim without providing a meaningful explanation. Id. ¶¶ 119-120. The Trustee claims that FDIC-R violated its statutory duties and that the FDIC-R should be required to reconsider her proof of claim. Id.

//

---

[7] The Court does not separately discuss the claims in Count I. The Court addresses Count I only to the extent that it overlaps with the remaining counts.

6

In Counts III-VIII, the Trustee seeks reimbursement or damages for the $117 million in assets that UCBH downstreamed to UCB. Id. ¶¶ 121-154. The Trustee claims that the transfers constitute avoidable preferential transfers or recoverable fraudulent transfers. Id.

In Count IX, the Trustee seeks reimbursement from FDIC-R and FDIC-C for any tax payments previously made on behalf of the Bank and for any future tax refunds.[8] Id. ¶¶ 155-157.

In Count X, the Trustee claims that the FDIC-R's refusal to account for and compensate the Trustee for property taken into receivership that belonged to UCBH amounts to conversion of the Trustee's property and is actionable under the Federal Tort Claims Act. Id. ¶¶ 158-160.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-2000 (9th Cir. 2003). Under FRCP 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Detailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 555 (2007)).

According to the Supreme Court, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949-50. In determining facial plausibility, whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

//
//

---

[8] Defendants have not moved to dismiss this claim.

7

### III. DISCUSSION

#### A. Constructive Fraud Claims (Counts III-VIII)

The Trustee has raised a battery of fraudulent transfer and avoidable preference claims against the FDIC. The Trustee asserts causes of action under 11 U.S.C. §§ 547 and 548, uses § 544 as a vehicle to raise equivalent state law claims under California Civil Code sections 3439.04 and 3439.05, and seeks recovery from the FDIC-C and FDIC-R under 11 U.S.C. § 550. Defendants assert that 12 U.S.C. § 1828(u) prohibits all of the Trustee's conveyance claims save for those based on an actual intent to delay, hinder or defraud.

Under 12 U.S.C. § 1828(u), no person may bring a claim against any federal banking agency for the return of assets transferred by the insured depository's controlling shareholder to that institution or for monetary damages arising out of the transfer if, at the time of the transfer, the institution was subject to a written directive to increase its capital. The statute expressly bars claims based on federal or state laws that provide for the avoidance of preferential transfers, fraudulent transfers or conveyances and similar claims that provide similar remedies. 12 U.S.C. § 1828(u)(2)(a). However, the statute does permit any claim based on an "actual intent to hinder, delay, or defraud pursuant to such fraudulent transfer or conveyance law." 12 U.S.C. § 1828(u)(2)(b).

Because each element of section 1828(u) has been fulfilled, all of the Trustee's constructive fraud claims are statutorily barred. First, the Trustee has brought conveyance claims against federal banking agencies. Compl. ¶¶ 121-54. Second, there is no dispute that UCB was an insured depository institution. Third, the Trustee asserts that UCBH was the controlling shareholder of UCB. Id. ¶ 3. Fourth, the Trustee references several instances in the Complaint where federal banking agencies directed UCB and UCBH in writing to infuse capital into UCB. For example, the Trustee asserts that on August 11, 2009, weeks before the first downstream infusion of capital, FDIC-C sent a notification letter to UCB informing it of its undercapitalized status and requiring it develop a capital restoration plan. Id. ¶ 34. On September 3, 2009, the CDFI and FDIC-C provided UCB and UCBH with a formal cease

8

1  and desist order that required, among other things, that the Bank restore its capital and submit
2  a capital restoration plan. Id. ¶¶ 37-39.

3        In her Opposition, the Trustee attempts to raise a factual issue as to the applicability of
4  section 1828(u). Opp'n (Dkt. 37) at 19. The Trustee posits that there is a factual issue as to
5  whether the written directives issued by the FDIC to UCB are sufficient to trigger the
6  application of section 1828(u). Id. As noted by FDIC-R, the Trustee ignores her own
7  allegations by taking such a position. Reply (Dkt. 38) at 2 (citing Compl. ¶¶ 34, 38, 39).[9]
8  The Trustee's contention that a factual issue exists as to whether a written directive was
9  issued for the purposes of section 1828(u) is without merit.[10]

10       In sum, the Court finds that section 1828(u) bars all of the Trustee's constructive fraud
11 claims. As a result, the Court dismisses those claims with prejudice.

### B. Actual Fraud Claims (Counts IV-VIII)

13       Under 12 U.S.C. § 1828(u), a party may assert "any claim against the FDIC based on
14 an actual intent to hinder, delay or defraud pursuant to such fraudulent transfer or
15 conveyance law." Both section 548 of the Bankruptcy Code and the California fraudulent
16 transfer law (as incorporated by section 544(b) of the Bankruptcy Code) require a plaintiff to
17 prove that the debtor acted with fraudulent intent. See 11 U.S.C. § 548(a)(1)(A); Cal. Civ.
18 Code § 3439.04(a)(1) (a claimant may avoid a transfer "if the debtor made the transfer . . .
19 with actual intent to hinder, delay or defraud"). Section 550 of the Bankruptcy Code permits

---

[9] As noted above, the Trustee asserts that the FDIC issued a prompt corrective action notification letter and a formal cease and desist order to UCB. The Trustee goes further to allege that these actions required UCB to raise its capital.

[10] Also in her Opposition, the Trustee raised an applied challenge to the constitutionality of section 1828(u). Opp'n at 21. The Trustee argues that section 1828(u), if applied to bar her claims, would work an unconstitutional taking in violation of the Fifth Amendment. Id. The Court lacks jurisdiction to hear such a claim.

In Eastern Enter. v. Apfel, 524 U.S. 498, 520 (1998), the Supreme Court explained that "a claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker grant of jurisdiction in the relevant statute." See Transmission Access Policy Study Grp. v. FERC, 225 F.3d 667, 690 (D.C. Cir. 2000) ("If there is a taking, and a claim for just compensation, then that is a Tucker Act matter to be pursued in the Court of Federal Claims, and not before us.").

a trustee, after the avoidance of a transfer under the trustee's avoiding powers, to recover the property transferred or the value of the property transferred from (1) the initial transferee; (2) any immediate or mediate transferee of the initial transferee; and (3) any entity for whose benefit the transfer was made.

Generally, the party attacking the transfer must show that the debtor/transferor acted with actual intent to hinder, delay or defraud when engaging in the transfer. See 11 U.S.C. 548(a)(1)(A) (a trustee may avoid a transfer "if the debtor voluntarily or involuntarily made such transfer . . . with actual intent to hinder, delay or defraud"). However, where the transferee controls the debtor's disposition of its property, then the transferee's intent can be imputed to the debtor/transferor. See In re Acequia, Inc., 34 F.3d 800, 806 (9th Cir. 1994).

Here, the Trustee has alleged that (1) the several written directives issued by the FDIC to UCB and UCBH to raise capital, and the timing of the challenged transfers in response to those directives, show that FDIC-C controlled[11] UCBH; (2) because several of the common badges of fraud are present, the FDIC-C's forcing UCBH to downstream funds to UCB demonstrates an actual intent to delay, hinder or defraud UCBH's creditors; and (3) FDIC-C did so for its own benefit in its capacity as an insurer. Compl. ¶¶ 13-65.

Because the Trustee has sufficiently alleged the necessary facts to state a plausible actual fraud claim, Defendants' motions to dismiss these claims are denied.[12]

### C. Disallowed Proof of Claim (Count II)

In Count II of the Complaint, the Trustee seeks both a declaration that the FDIC-R's disallowance of her proof of claim is void and an order directing the FDIC-R to reconsider her proof of claim. Compl. ¶¶ 119-120. Under 12 U.S.C. § 1821(d)(5)(E), "[n]o court may review the Corporation's determination . . . to disallow" a proof of claim. Section 1821(j)

---

[11] Each party urges the Court to adopt its preferred definition of "control." The Court declines to do so at this time. The Court will entertain arguments on the appropriate standard at the motion for summary judgment stage of the litigation, if necessary.

[12] Because the FDIC-R is a subsequent transferee of the transferred assets, it, too, is an entity from whom the Trustee may recover. See 11 U.S.C. § 550.

10

provides that "no court may take any action . . . to restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver."[13]

Because the Court lacks jurisdiction to grant the Trustee's requested relief, the Court grants the Defendants' motion to dismiss this claim with prejudice.

### D.     Conversion Claim (Count X)

In Count X of the Complaint, the Trustee asserts a conversion claim against the FDIC under the Federal Tort Claims Act. Compl. ¶¶ 159-160. The United States is the proper defendant under the Federal Torts Claim Act. See 28 U.S.C. § 1346(b); see also O'Melveny & Myers v. FDIC, 512 U.S. 79, 85 (1994) ("The FDIC is not the United States . . . ."); Kennedy v. U.S. Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998) ("Because the United States is the only proper party defendant in an FTCA action, the district court correctly dismissed [plaintiff's] complaint as improperly filed against the Postal Service and Runyon.").

The Court dismisses with prejudice the Trustee's conversion claim because the FDIC is not the United States, and only the United States may be sued under the Federal Torts Claim Act.

### IV.    CONCLUSION

For the aforementioned reasons,  the Court orders the following actions with respect to each claim:

//

//

---

[13] In Sharpe v. FDIC, 126 F.3d 1147, 1155 (9th Cir. 1997), the court stated that "[t]he [jurisdictional] bar imposed by § 1821(j) does not extend to situations in which the FDIC as receiver asserts authority beyond that granted to it as a receiver." "Section 1821(j) shields only the exercise of powers or functions Congress gave to the FDIC; the provision does not bar injunctive relief when the FDIC has acted beyond, or contrary to, its statutorily prescribed, constitutionally permitted, powers or functions." Id. (internal citations and quotations omitted).
The Trustee argues that FDIC-R's one-sentence denial of its proof of claim falls within the jurisdictional exception to section 1821(j). Opp'n at 34-36. The Court disagrees. The FDIC-R acted within its statutory authority by denying the Trustee's proof of claim. See 12 U.S.C. § 1821(d)(5)(D)(i). The Trustee has cited no authority to support the proposition that FDIC-R is statutorily required to provide a detailed explanation of why it is denying a proof of claim.

11

1. Count I: In this claim, the Trustee seeks de novo review of her proof of claim. The Court dismisses this claim with prejudice in so far as it contains claims of constructive fraud and conversion.[14]

2. Count II: The Court dismisses with prejudice the Trustees's request that the Court declare FDIC-R's denial of her proof of claim void. Similarly, the Court dismisses with prejudice the Trustee's request that the Court order FDIC-R to reconsider her proof of claim.

3. Counts III-VIII: The Court dismisses all claims in these counts that do not allege actual fraud with prejudice. The Court denies the Defendants' motions to dismiss the claims in these counts that do allege actual fraud.

4. Count IX: FDIC-C and FDIC-R have not moved to dismiss the tax payment and refund claims.

5. Count X: The Court dismisses the Trustee's conversion claim with prejudice.

The parties are to proceed with discovery and for now must limit their discovery to the time period of January 2009 to January 2010.

**IT IS SO ORDERED.**

Dated: April 21, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[14] The Court addresses Count I only to the extent that it overlaps with the remaining counts.