United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E. LYNN SCHOENMANN,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>    Defendant. | No. C 10-03989 CRB<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION** |

At the August 24, 2012 motion hearing on the FDIC's Motion to Strike and to Dismiss Certain Counts of Plaintiff's Amended Complaint, see Minutes (dkt. 113), this Court held that, if the Trustee believed that she had new evidence that rendered the Court's April 21, 2011 Order incorrect, she should have brought a motion for reconsideration, rather than amending her complaint to include claims that had been dismissed with prejudice.[1] In response to that holding, the Trustee, on the evening of August 24, 2012, filed a Motion for Leave to File a Motion for Reconsideration of the Court's April 21, 2011 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss. See Mot. (dkt. 112).

Local Civil Rule 7-9 provides that a party moving for leave to file a motion for reconsideration of any interlocutory order must show (1) that "a material difference in fact or law exists from that which was presented to the Court before the entry of the interlocutory

---

[1] The Court has now reiterated that holding in its Order granting the FDIC's motion.

United States District Court
For the Northern District of California

order for which reconsideration is sought" or (2) "[t]he emergence of new material facts or a change of law occurring after the time of such order" or (3) "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." The Trustee argues that a material difference in fact or law exists, and that, although reasonably diligent, the Trustee did not know of such fact or law at the time of the April 21, 2011 Order. See Mot. at 1-2. Specifically, the Trustee argues that she "did not have, and therefore the Court did not have, the actual text of the August 11, 2009 letter. Nor did they have . . . the subsequent relevant decision in F.D.I.C. v. AmFin Fin. Corp., 1:10 CV 1298, 2011 WL 2200387 at *5 (N.D. Ohio June 6, 2011)." Id. at 2.

The Court agrees that it had not seen the text of the August 11, 2009 letter prior to issuing its April 21, 2011 Order, and that the April 21, 2011 Order pre-dates the Northern District of Ohio's June 2011 AmFin opinion. However, the Court does not find that either constitutes a material difference in fact or law. See Local Civil Rule 7-9(b)(1).

### A. The August 11, 2009 Letter

The Trustee asserts that her original Complaint mistakenly relied on the FDIC's Material Loss Review, which summarized the August 11, 2009 letter. See Mot. at 2-4. Based on the FDIC's summary, the Trustee believed that the letter constituted a direction issued in writing by a Federal banking agency to UCB to increase its capital. Id. at 3. The Trustee subsequently received a copy of the August 11, 2009 letter and now asserts that it is not a direction to increase capital. Id. at 5, 7-8; Kieve Decl. (dkt. 112-1) ¶ 19.

But the Material Loss Review did not state that the letter was a direction to increase capital; it merely stated that the August 11, 2009 letter informed UCB "of its Undercapitalized status and required UCB to develop a capital restoration plan." See Amended Kieve Decl. (dkt. 105) Ex. A (Material Loss Review) at 28. That is indeed what the letter says. See id. Ex. B (Aug. 11, 2009 letter) ("your bank falls within the Undercapitalized prompt corrective action capital category. . . . [UCB] is required to file a written capital restoration plan with this office by September 15, 2009. Additional restrictions will apply if [UCB] fails to submit an acceptable capital restoration plan or fails

2

1  to implement the plan in any material respect."). Relying on the Material Loss Review, the
2  Trustee described the letter accurately in her original Complaint. See Compl. (dkt. 1) ¶ 34
3  ("On August 11, 2009, the FDIC sent another 'Prompt Corrective Action' notification letter
4  to UCB informing it of its Undercapitalized status and requiring UCB to develop a capital
5  restoration plan."). That the original Complaint went on to characterize that letter as
6  "requiring UCBH to inject additional capital into the Bank," see id. ¶ 35, appears to the
7  Court to reflect not a mistake of fact, but a tactical choice the Trustee made in drafting the
8  original Complaint.[2]

9  Receipt of the complete text of the August 11, 2009 letter does not undermine the
10 conclusion that the letter was a direction to increase capital. Because the letter requires not
11 only that UCB submit a capital restoration plan (the only instruction that was mentioned in
12 the Material Loss Review) but that it implement that plan, see Amended Kieve Decl. Ex. B,
13 receipt of the letter's complete text actually supports and strengthens the Trustee's original
14 conclusion that the letter was a direction to increase capital.

15 Accordingly, the August 11, 2009 letter is not a material difference in fact or law.

### B. The AmFin Case

17 The Trustee next argues that, at the time of the Court's Order, she had not seen the
18 (subsequently decided) decision of the Northern District of Ohio in AmFin, 2011 WL
19 2200387. See Mot. at 5. This is of no consequence. That decision, which is of course not
20 binding on this Court, held that a cease and desist order sent to a holding company directing
21 it to "submit a plan" "does not entail any commitment to achieve the plan's goal." See
22 AmFin, 2011 WL 2200387, at *9. AmFin is distinguishable.

23 The AmFin court never considered whether a communication from a regulator was a
24 "direction issued in writing" for a bank. Instead, that case considered "whether [a holding

---

[2] As the FDIC notes, "the Trustee successfully fended off dismissal of certain fraudulent transfer claims solely because of her assertion that FDIC-Corporate exercised 'control' over UCBH Holdings in making the challenged transfers. Her theory of 'control' turned directly on the assertion that the August 11, 2009 'prompt corrective action' notice letter from FDIC-Corporate allegedly 'requir[ed] UCBH to inject additional capital into the Bank.' . . . In denying defendants' motions to dismiss, the Court relied on this allegation." See MTD (dkt. 92) at 7.

3

company] faces a 'deficit under any commitment . . . to a Federal depository institutions [sic] regulatory agency . . . to maintain the capital of' [the bank], as contemplated by section 365(o)" of the Bankruptcy Code. Id. at *2. The holding company's cease and desist order in that case "require[d] only that [the holding company] 'submit a plan'" and did "not entail any commitment to achieve the plan's goal, or to actually maintain the capital of the Bank." Id. at *9. In AmFin, there was also testimony that "only the Bank, and not [the holding company] was obligated by the Cease and Desist Orders to have or maintain any specified level of capital." Id. at *10. That the court concluded that the holding company therefore had no obligation to maintain the capital of the Bank, such that the FDIC could not recover from the holding company in bankruptcy court, is unsurprising. It also says little about whether the August 11, 2009 letter to UCB (not its holding company), informing it that it was undercapitalized and requiring it to make and implement (not only make) a plan to address its undercapitalization, constitutes a direction in writing for UCB to increase its capital (not a commitment under bankruptcy law).

Accordingly, the AmFin case is not a material difference in fact or law.[3]

**C. Conclusion**

For the foregoing reasons, the Court finds that the Trustee has not met her burden under Local Civil Rule 7-9. The Motion for Leave to File a Motion for Reconsideration is

//

---

[3] To be clear, the Court continues to find that the August 11, 2009 letter is a direction to increase capital. That letter informed UCB: "your bank falls within the Undercapitalized prompt corrective action capital category. . . . [UCB] is required to file a written capital restoration plan with this office by September 15, 2009. Additional restrictions will apply if [UCB] fails to submit an acceptable capital restoration plan or fails to implement the plan in any material respect." See Amended Kieve Decl. Ex. B. The FDIC therefore told UCB that it needed capital, needed a plan to get more capital, and needed to implement that plan. This falls within the plain meaning of section 1828(u), which prohibits claims against the FDIC-R for transfers to a bank made when it "is subject to any direction issued in writing by a Federal banking agency to increase its capital." 12 U.S.C. § 1828(u)(1)(A) (emphasis added). That statute does not require that the "any direction" specifically be a "directive" to increase capital pursuant to 12 C.F.R. § 325.6. The term "any direction" is broader than that. Relatedly, the Trustee's argument that the August 11, 2009 letter "did not 'direct' [UCB] to do anything other than remind it that it needed to 'submit a plan,'" Mot. at 8, is an oversimplification – UCB was directed not only to file a plan to address its undercapitalization, but to implement it. See Amended Kieve Decl. Ex. B. Nor does anything in the statute require that the plan have been accepted, as the Trustee argues. See Mot. at 8-9.

4

therefore DENIED.

**IT IS SO ORDERED.**

Dated: September 4, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE