United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

E. LYNN SCHOENMANN,

          Plaintiff,

   v.

FEDERAL DEPOSIT INSURANCE
CORPORATION,

          Defendant.

_____/

No. C 10-03989 CRB

**ORDER GRANTING MOTION TO
DISMISS CERTAIN COUNTS OF
FIRST AMENDED COMPLAINT**

      E. Lynn Shoenmann (the "Trustee"), Chapter 7 Trustee of United Commercial Bank
Holdings, Inc. ("UCBH"), seeks to recover from the FDIC in both its corporate ("FDIC-C")
and receivership ("FDIC-R") capacities assets that she alleges were fraudulently transferred
to United Commercial Bank ("UCB").  The Trustee alleges that the FDIC kept UCB open
even when it had became insolvent in order to facilitate downstream transfers of UCBH's
assets to UCB; she alleges that it did so to reduce the FDIC's losses when UCB inevitably
failed.  In April of 2011, the Court dismissed with prejudice a number of the Trustee's
claims, but spared those claims alleging actual fraud.  See Schoenmann v. FDIC, No. 10-
3989, 2011 WL 1522364 (N.D. Cal. April 21, 2011) (hereinafter "Order") (dkt. 46).  The
Trustee has now amended, re-pleading a number of the previously dismissed claims and

United States District Court
For the Northern District of California

1    adding new claims, see FAC (dkt. 104), and the FDIC[1] moves to strike or dismiss certain of

2    those claims, see MTD (dkt. 92).[2]  As explained below, the Court GRANTS the Motion.

3    **I.      BACKGROUND**

4            **A.     Factual Background**

5            The following is a timeline of the Trustee's allegations concerning UCB's struggles,

6    regulators' communications with UCB and UCBH, and the failed efforts by UCB and UCBH

7    to keep UCB afloat.[3]

8    •     April 6, 2009.  The California Department of Financial Institutions ("CDFI") and
           FDIC issues a joint "Report of Targeted Review" of UCB, noting sharp increases in
9          adversely classified assets, deteriorating market conditions, and inaccurate loan
           grades.  FAC ¶¶ 10-11

10
     •     April 20, 2009.  The FDIC downgrades UCB's CAMELS[4] rating to a 3 out of 5, and
11         designates the bank as "troubled."  Id. ¶¶ 12-13.

12   •     May 28, 2009.  The FDIC sends UCB a letter informing it that it "will be formally
           designated a 'problem' institution" and "is also considered troubled."  Id. ¶ 14.
13
     •     June 30, 2009.  The FDIC and CDFI issue a follow-up report to UCB and UCBH
14         summarizing the April 2009 targeted review and announcing that a Cease and Desist
           Order would be forthcoming.  Id. ¶ 15.
15
     •     July 21, 2009.  The FDIC sends UCB a proposed "Order to Cease and Desist" and
16         "Stipulation and Consent to the Issuance of an Order to Cease and Desist."  Id. ¶ 16.

17   •     July 31, 2009.  "[T]he combined UCBH/Bank board of directors authorize[s] a $50
           million capital contribution from UCBH to [UCB]."  Id. ¶ 52.
18
     •     August 10, 2009.  The FDIC and CDFI send UCB their June 15, 2009 "Report of
19         Targeted Review," which notes that "capital is stressed given the growing risk profile
           as evidenced by the declining asset quality, deficient earnings, and expected limited
20         support from the parent company."  Id. ¶ 17.  Among the requested actions is a written
           response to the findings, and an action plan.  Id.
21

22   _____

23        [1] For ease of reference the Court refers to the FDIC as a single entity and does not, for the most
     part, distinguish between the FDIC-C and the FDIC-R.

24        [2] Importantly, the Motion does not challenge every count; the fraud-based avoidance claims, and
     Count XV, for "Entitlement to Tax Payments and Future Tax Refunds," are not at issue.
25
          [3] This timeline does not include the many allegations in the FAC pertaining to the regulators'
26   knowledge that they planned to close UCB.  Although such allegations are central to Plaintiff's fraud
     claims, they are not relevant to the pending Motion.
27
          [4] The FAC explains that CAMELS stands for banks' Capital adequacy, Asset quality,
28   Management, Earnings, Liquidity and Sensitivity to market risk; it is part of the FDIC's "Uniform
     Financial Institutions Rating System."  Id. ¶ 12.

- August 10, 2009.  Both UCB and UCBH are insolvent.  Id. ¶ 22.

- August 11, 2009.  The FDIC sends a pro forma "Prompt Corrective Action" letter to UCB informing it of its undercapitalized status and notifying it that it is required to submit a "capital restoration plan" to the FDIC.  Id. ¶ 28.

- August 17, 2009.  Working in parallel with the FDIC, the Federal Reserve Bank of San Francisco (the regulator for UCBH) notifies UCBH that its CAMELS rating has been downgraded to a 4, and warns that a "formal enforcement action is currently being drafted by the Federal Reserve for the bank holding company."  Id. ¶ 31.  It further states that UCBH, like UCB, is considered "troubled," and instructs that UCBH "must act as a source of managerial and financial strength to the bank.  As such, we expect management and the board of directors will take all actions necessary to ensure company assets are conserved for the sole benefit of [UCB]."  Id. ¶ 32.

- August 31, 2009.  "[I]n the face of the bank regulators' April 2009 'Targeted Review,' their confidential draft targeted review report and the FDIC's August 11, 2009 'Prompt Corrective Action' letter, as well as additional other significant pressure – UCBH downstream[s] $50 million to [UCB]."  Id. ¶ 53.

- September 3, 2009.  Regulators from CDFI and the FDIC meet with representatives from UCBH and UCB and present them with the "Order to Cease and Desist" mentioned in the June 30, 2009 letter.  Id. ¶ 57.  UCB agrees to sign the Consent Agreement and the Order to Cease and Desist.  Id. ¶ 59.

- September 9, 2009.  The Federal Reserve Bank pressures UCBH to infuse more capital into UCB, stating that UCBH needs to "serve as a source of strength to the subsidiary bank."  Id. ¶¶ 69-70.  The Federal Reserve Bank proposes a "Written Agreement" for UCBH, obliging UCBH to maintain sufficient capital at UCBH and at UCB.  Id. ¶ 70.  The Federal Reserve Bank tells the board that if it does not agree to the Written Agreement, the Federal Reserve Bank could pursue a Cease and Desist Order "very similar to the one the Board saw last week with the FDIC and the DFI."  Id. ¶ 71.  UCB and UCBH enter into the Written Agreement.  Id. ¶ 72.

- September 9, 2009.  FDIC formally notifies UCB that its CAMELS rating has been downgraded to a 5 in all categories.  Id. ¶ 75.  CDFI sends its own letter stating this on September 11, 2009.  Id.  The Federal Reserve Bank notifies UCBH that it was also downgraded to a 5 on September 15, 2009.  Id.

- September 16, 2009.  The FDIC meets with UCBH and UCB to get an update on their capital raising efforts and to identify potential bidders.  Id. ¶ 83.

- September 24, 2009.  "As demanded by the FDIC, UCBH and [UCB] execute[] the 'Capital Maintenance Commitment and Guaranty' by board resolution."  Id. ¶ 217.  That document provides that UCBH will provide financial strength and resources to UCB, and in exchange, the FDIC will accept UCB's Plan, forego the right to treat UCB as if it were significantly undercapitalized, and forego other such action as would be necessary absent UCBH's Commitment.  Id. ¶ 216.

- October 29, 2009.  The FDIC sends UCB a form "Notification of Capital Category" indicating that UCB "falls within the Significantly Undercapitalized capital category" and notifying it that it is required to submit a "capital restoration plan" to the FDIC.  Id. ¶ 112.

- October 29, 2009.  On the same day, UCBH receives a tax refund from the IRS of $67 million.  Id. ¶ 145.

3

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- October 29, 2009.  Also on the same day, UCB receives a "Prompt Corrective Action" notification letter form the FDIC informing it of its "Significantly Undercapitalized" status.  Id. ¶ 150.

- October 30, 2009.  "In response to the October 29, 2009 letter, and not knowing that FDIC was going to close the Bank on November 6," UCBH downstreams $58 million of its tax return to UCB.  Id. ¶ 153.

- November 2, 2009.  The FDIC sends UCB another "Prompt Corrective Action" stating that it had rejected UCB's September capital contribution plan because it contained unrealistic and unobtainable goals.  Id. ¶ 170.  The "Prompt Corrective Action" further directs UCB to secure more capital and submit a revised capital restoration plan.  Id.

- November 6, 2009.  In response to "immense pressure and control" by the FDIC, see id. ¶ 157, UCBH downstreams $7.2 million of the remaining tax refund money to UCB.  Id. ¶ 172.

- November 6, 2009.  On the same day, CDFI closes UCB and appoints FDIC-R as its receiver.  Id. ¶ 175.  That same day, FDIC-R and FDIC-C enter into a purchase and assumption agreement with East West Bank.  Id. ¶ 176.

- November 24, 2009.  UCBH files for Chapter 7 bankruptcy in the Northern District of California.  Id. ¶ 178.

**B.     Procedural History**

On February 10, 2010, the Trustee asserted claims against the receivership by filing a

proof of claim.  See Opp'n (dkt. 98) Ex. C.  The proof of claim alleged that because the

FDIC-R and the FDIC-C "thwarted" the Trustee's access to books and records, she

"reserve[d] all rights to amend and supplement [her] Proof of Claim as she obtain[ed] more

information."  Id. at 1.  The proof of claim then asserted, among other claims, an

unliquidated claim against FDIC-R and the Bank based on any and all taxes paid by UCBH

on behalf of UCB.  See Opp'n Ex. C at 2.  The proof of claim also asserted the right to

transfers from UCBH to UCB, which "may be recovered pursuant to legal theories including

bankruptcy preferences upon section 547; fraudulent transfer (under bankruptcy and state

law); other bankruptcy and state law avoidance theories, such as the Trustee's strong-arm

powers under section 544; and breach of contract and other state-law remedies."  Id.  The

FDIC-R denied the Trustee's proof of claim with one sentence: "[the] claim has not been

proven to the satisfaction of the Receiver."  See Opp'n Ex. D.  FDIC-R's notice of denial

United States District Court
For the Northern District of California

1    instructed the Trustee to file a lawsuit if she disagreed with the disallowance of her claims.

2    Id.

3           The Trustee brought suit in September 2010 to seek *de novo* review of her proof of

4    claim.  See Compl. (dkt. 1).  This Court dismissed much of the original Complaint in April

5    2011.  See generally Order.  Specifically, the Court dismissed with prejudice the constructive

6    fraud claims based on 12 U.S.C. § 1828(u), which provides that no person may bring a claim

7    against any federal banking agency for the return of assets transferred by the insured

8    depository's controlling shareholder to that institution or for monetary damages arising out of

9    the transfer if, at the time of the transfer, the institution was subject to a written directive to

10   increase its capital.  Order, 2011 WL 1522364, at *5.  The Court noted that the Trustee's

11   argument that "there is a factual issue as to whether the written directives issued by the FDIC

12   to UCB are sufficient to trigger the application of section 1828(u)" ignored her "own

13   allegations."  Id.[5]  Because the statute does permit claims based on an "actual intent to

14   hinder, delay, or defraud" pursuant to fraudulent transfer or conveyance law, see 12 U.S.C. §

15   1828(u)(2)(B), the Court did not dismiss the Trustee's actual fraud claims, finding that she

16   had stated a claim by alleging that

>    (1) the several written directives issued by the FDIC to UCB and UCBH to raise
>    capital, and the timing of the challenged transfers in response to those directives, show
>    that the FDIC-C controlled UCBH; (2) because several of the common badges of
>    fraud are present, FDIC-C's forcing UCBH to downstream funds to UCB
>    demonstrates an actual intent to delay, hinder or defraud UCBH's creditors; and (3)
>    the FDIC-C did so for its own benefit in its capacity as insurer.

17
18
19
20

21   Id. at *6.  The Court dismissed with prejudice the Trustee's claim seeking a declaration that

22   the FDIC-R's disallowance of her proof of claim was void, pursuant to 12 U.S.C. §

23   1821(d)(5)(E).  Id. at *6-7.  And the Court dismissed with prejudice the Trustee's conversion

24   claims, finding that the proper defendant under the Federal Tort Claims Act is the United

25   States, not the FDIC.  Id. at *7.

26

27   _____

28
     [5] For example, the Trustee alleged in the original Complaint that the FDIC's August 11, 2009
     Prompt Corrective Action notification to UCB, which "required UCB to develop a capital restoration
     plan," required "UCBH to inject additional capital into the Bank," and was one of three events that
     precipitated UCBH's August 31, 2009 downstreaming of $50 million to UCB.  See Compl. ¶¶ 34, 35.

**United States District Court**
For the Northern District of California

1    At a case management conference on March 23, 2012, the Trustee's counsel stated

2  that he intended to move for leave to file an amended complaint (the FDIC recalls that

3  counsel stated that he wanted to "clean up a few things" – the Trustee has not objected to that

4  characterization of the hearing); the Court granted the motion at the conference.  See Minutes

5  (dkt. 82).

6    The Trustee filed the FAC, which now includes the following causes of action: (1)

7  Determination of the Proof of Claim; (2) Invalidity of the Consent Agreement and Order to

8  Cease and Desist; (3) Avoidance of Preferential Transfers Pursuant to 11 U.S.C. § 547, based

9  on the capital contributions; (4) Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §

10  548, based on the capital contributions; (5) Avoidance of Fraudulent Transfers Pursuant to 11

11  U.S.C. § 548, based on the capital contributions; (6) Avoidance of Fraudulent Transfers

12  Under 11 U.S.C. § 544(b) and California Civil Code § 3439.04, based on the capital

13  contributions; (7) Avoidance of Fraudulent Transfers under 11 U.S.C. § 544(b) and

14  California Civil Code § 3439.05, based on the capital contributions; (8) Recovery of Avoided

15  Transfers Pursuant to 11 U.S.C. § 550, based on the capital contributions; (9) Avoidance of

16  Preferential Transfers Pursuant to 11 U.S.C. § 547, based on the Capital Maintenance

17  Commitment and Guaranty; (10) Recovery of Fraudulent Transfer Pursuant to 11 U.S.C. §

18  548, based on the Capital Maintenance Commitment and Guaranty; (11) Avoidance of

19  Fraudulent Transfer Pursuant to 11 U.S.C. § 548, based on the Capital Maintenance

20  Commitment and Guaranty; (12) Avoidance of Fraudulent Transfer under 11 U.S.C. § 544(b)

21  and California Civil Code § 3439.04, based on the Capital Maintenance Commitment and

22  Guaranty; (13) Avoidance of Fraudulent Transfer under 11 U.S.C. § 544(b) and California

23  Civil Code § 3439.05, based on the Capital Maintenance Commitment and Guaranty; (14)

24  Recovery of Avoided Transfer Pursuant to 11 U.S.C. § 550, based on the Capital

25  Maintenance Commitment and Guaranty; and (15) Entitlement to Tax Payments and Future

26  Tax Refunds.  FAC ¶¶ 248-323.

27

28

1      The FDIC moves to strike and to dismiss, arguing that the FAC both incorporates

2  claims that the Court previously dismissed with prejudice, and fails to state a claim as to the

3  seven new claims.  See generally MTD.

4  **II.**    **LEGAL STANDARD**

5      A motion to strike under Federal Rule of Civil Procedure 12(f) is intended "to avoid

6  the expenditure of time and money that must arise from litigating spurious issues by

7  dispensing with those issues prior to trial."  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527

8  (9th Cir. 1993), overruled on other grounds, 510 U.S. 517 (1994).  Rule 12(f) permits a court

9  to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent,

10  or scandalous matter."

11      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

12  sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-

13  2000 (9th Cir. 2003).  Under FRCP 8(a)(2), a complaint must contain a "short and plain

14  statement of the claim showing that the pleader is entitled to relief."  "Detailed factual

15  allegations" are not required, but the Rule does call for sufficient factual matter, accepted as

16  true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, --- U.S. ----, ---

17  -, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 555 (2007)).

18  **III.**    **DISCUSSION**

19      The FDIC moves to dismiss two categories of claims: (A) the avoidance claims to the

20  extent that they do not hinge on actual fraud; and (B) the new claims.  This Order addresses

21  each category in turn.

22        **A.**    **The Non-Fraud Avoidance Claims**

23      The FDIC first seeks to strike or dismiss the non-fraud (or constructive fraud)

24  avoidance claims contained in counts I, III, IV, V, VI, VII and VIII of the FAC.  The Court

25  notes that the FDIC does not seek to dismiss those claims entirely, as some do allege actual

26  fraud as an alternative basis for liability.  See, e.g., FAC ¶ 272 (count V, Avoidance of

27  Fraudulent Transfers Pursuant to 11 U.S.C. § 548, alleging that the FDIC caused the capital

28  contributions to be made "with actual intent to hinder, delay or defraud").  Instead the FDIC

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

argues, correctly, that the non-fraud claims are improper because the Court dismissed them with prejudice in its April 2011 Order.  See MTD at 6 (citing Order, 2011 WL 1522364, at *5-6).  That Order explained that, because "each element of section 1828(u) has been fulfilled," the Trustee's constructive fraud claims were barred.  See Order, 2011 WL 1522364, at *5.  The Court dismissed those claims with prejudice.  Id. at *6.

The Trustee argues that she should be permitted to re-plead the constructive fraud claims, relying on Federal Rule of Civil Procedure 15(a)(2)'s instruction that courts should give leave to amend "when justice so requires," and upon this Court's having granted her leave to amend.  See Opp'n at 4.  But the Court dismissed the constructive fraud clams with prejudice.  Order, 2011 WL 1522364, at *5.  The Court never reversed its ruling that those claims were dismissed with prejudice.  Although the Court granted the Trustee leave to amend her complaint, the Trustee did not have leave to re-plead the constructive fraud claims.

The Trustee's many additional arguments for why she should be permitted to re-plead claims that were dismissed with prejudice rely on her contention that she had limited knowledge at the time she filed the original Complaint.  See Opp'n at 5-6.  No doubt this is true, but it is insufficient.  In general, plaintiffs have limited knowledge of the facts before discovery.[6]  The Trustee represents that "[i]n particular, the Trustee did not have the August 11, 2009 letter from the FDIC that she mistakenly assumed, based on the FDIC's summary one-sentence description, constituted a 'direction issued in writing by a Federal banking agency to [the Bank to] increase its capital.'"  Kieve Decl. ¶¶ 1-13.  The Trustee has now obtained the August 11, 2009 letter and asserts that it is not a "direction issued in writing by a Federal banking agency to [the Bank to] increase its capital."  See FAC ¶ 30.  The distinction is significant because the Trustee would like for section 1828(u) not to bar her

---

[6] The Court recognizes that the Trustee made a point of asserting in the original Complaint that the Complaint was "prepared[] using the information the Trustee had available that was, in certain instances, only summary information."  See Comp. ¶ 72.

United States District Court
For the Northern District of California

1   constructive fraud claims relating to the August 11, 2009 letter (or, more to the point, the $50

2   million August 31, 2009 transfer).[7]

3          If the Trustee, upon obtaining the August 11, 2009 letter, concluded that she had new

4   evidence that rendered the Court's April 2011 Order incorrect, she should have brought a

5   motion for reconsideration.  See Local Civil Rule 7-9 (providing that a party must show that

6   "a material difference in fact or law exists from that which was presented to the Court before

7   the entry of the interlocutory order for which reconsideration is sought" or "[t]he emergence

8   of new material facts or a change of law" or "[a] manifest failure by the Court to consider

9   material facts or dispositive legal arguments").  The Trustee never moved for reconsideration

10  of the Court's Order before filing her FAC.  Instead, she amended her complaint, including

11  claims that had been dismissed with prejudice, and allegations that contradicted those in her

12  original Complaint.  This is improper.

13         Accordingly, the constructive fraud claims are DISMISSED again, with prejudice.

14  **B.     The New Claims**

15         The FDIC next moves to dismiss all of the FAC's new claims.

16             **1.     The Claim to Set Aside the Cease and Desist Order**

17         The FAC's second cause of action is for Invalidity of the Consent Agreement and

18  Order to Cease and Desist.  See FAC ¶¶ 251-52.  That cause of action alleges simply that

19  "The Consent Agreement and the Order to Cease and Desist should be set aside and be

20  deemed to be of no force or effect as the product of the FDIC's and CDFI's material

21  fraudulent misrepresentations and omissions."  Id. ¶ 252.  The FDIC moves to dismiss this

22  claim for lack of jurisdiction.

23         12 U.S.C. § 1818(i)(1) provides that, except where certain exceptions apply that are

24  not at issue here, "no court shall have jurisdiction to affect by injunction or otherwise the

25  issuance or enforcement of any notice or order under any such section, or to review, modify,

26  suspend, terminate, or set aside any such notice or order."  Accordingly, the FDIC is correct

27  

28         [7] She concedes that the September 3, 2009 Cease and Desist Order, which explicitly directed UCB to raise its capital, was a "direction issued in writing."  See Opp'n at 12.

9

United States District Court
For the Northern District of California

1   that this Court lacks jurisdiction to hear the Trustee's challenge to the cease and desist order.[8]

2   See also Ridder v. Office of Thrift Supervision, 146 F.3d 1035, 1042 (D.C. Cir. 1998)

3   ("section 1818(i)(1) precludes judicial review of the Temporary Order"); Baytree Leasing

4   Co. v. Alliance Investors LLC, No. 11-6619, 2012 WL 1016016, at *3 (N.D. Ill. Mar. 21,

5   2012) ("By seeking a determination of the validity and scope of the Consent Order, Plaintiffs

6   inherently seek a review of the Consent Order, which goes beyond the jurisdiction of a

7   district court.").

8   The Trustee argues, however, that she "may raise the affirmative defense of fraud and

9   challenge the enforcement of the consent orders should OTS attempt to collect." Opp'n at 16

10  (quoting Henry v. Office of Thrift Supervision, 43 F.3d 507, 514 (10th Cir. 1994)).  She

11  maintains that she is not seeking "to enjoin enforcement" of the Cease and Desist Order, but

12  to "raise the FDIC's fraud as an affirmative defense to the FDIC's reliance on" section

13  1828(u).  Id. at 16-17 (also citing Wolkowitz v. FDIC, 527 F.3d 959, 971-72 (9th Cir.

14  2008)[9]).  This argument makes little sense.  The FDIC is not trying to collect, and the Trustee

15  is not raising an affirmative defense; she is the one bringing suit.  Henry therefore does not

16  apply.  Because the Trustee has affirmatively asked the Court to set aside the Cease and

17  Desist Order, id. ¶ 252 ("The Consent Agreement and the Order to Cease and Desist should

18  be set aside"), and 12 U.S.C. § 1818(i)(1) prevents this Court from "set[ting] aside any such

19  notice or order," this claim is DISMISSED with prejudice.

20  **2.      The Remaining New Claims**

21  The other six new claims in the FAC all seek to avoid UCBH's September 24, 2009

22  Capital Maintenance Commitment and Guaranty.  The FAC makes numerous allegations

23  about the Capital Maintenance Commitment and Guaranty, chiefly that "the FDIC's

24

25      [8] Although the FAC alleges the invalidity of the Consent Agreement as well as the Cease and
    Desist Order, the Consent Agreement was simply the means by which the parties entered into the Cease
26  and Desist Order.  See FAC ¶ 16 (FDIC sends UCB a proposed "Order to Cease and Desist" and
    "Stipulation and Consent to the Issuance of an Order to Cease and Desist"); ¶ 59 (UCB agrees to sign
27  the Consent Agreement and the Order to Cease and Desist.).

28      [9] Wolkowitz, 527 F.3d at 962-63, like Henry, involved an action in which the FDIC was
    demanding that an obligation be paid.

**United States District Court**
For the Northern District of California

representations, upon which UCBH and [UCH] entered into the 'Capital Maintenance Commitment and Guaranty,' were clearly fraudulent.  As of September 24, 2009, the FDIC had already put in place the mechanisms to close [UCB] and had set a tentative closing date of October 16, 2009."  FAC ¶ 218.  The FAC also alleges that the Capital Maintenance Commitment and Guaranty was entered into when UCBH was insolvent, or that it rendered UCBH insolvent, and that the FDIC knew this, rendering the agreement avoidable and/or recoverable.  Id. ¶¶ 231-36.  The FAC thereby "asserts an avoidable preference or fraudulent transfer claim" as to the Capital Maintenance Commitment and Guaranty, and asks that it be "set aside as a fraudulent conveyance because it would render UCBH further insolvent for no or inadequate consideration."  Id. ¶¶ 237-38.  The FDIC argues that these claims should be dismissed for two reasons.

### a.    Exhaustion

The FDIC argues that the Trustee failed to exhaust these claims because she "failed to include [them], or anything remotely resembling them, in her receivership proof of claims."  MTD at 11.  A party that fails to include a claim in a timely receivership claim is barred from bringing that claim in court against the FDIC.  See BHC Interim Funding II, L.P. v. FDIC, --- F. Supp. 2d ---, 2012 WL 1075845, at *6 (D. D.C. Mar. 30, 2012).  In response, the Trustee asks the Court to take notice of her proof of claim,[10] arguing that "[a]ll the legal theories asserted in the [FAC] (and more) were and are encompassed in [it]."  Opp'n at 15-16.

At first glance, the proof of claim appears to be quite broad, asserting "legal theories including bankruptcy preferences upon section 547; fraudulent transfer (under bankruptcy and state law); other bankruptcy and state law avoidance theories, such as the Trustee's strong-arm powers under section 544; and breach of contract and other state-law remedies."  See Opp'n Ex. C.  Nonetheless, the FDIC correctly noted at the motion hearing that the proof of claim's reference to "bankruptcy and state law avoidance theories" was only in reference to "these transfers."  See id.  The claims relating to the Capital Maintenance Commitment

---

[10] The Court does so, as the FAC incorporates the proof of claim by reference.  See FAC ¶ 240; ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) ("we may consider any written instrument . . . incorporated into the complaint by reference").

United States District Court
For the Northern District of California

and Guaranty do not seek the recovery of a transfer; instead they argue that the Trustee should not be liable under the Guaranty because it was fraudulently obtained.  See FAC ¶¶ 237-38.  The proof of claim does not reference avoidable obligations, nor does its reference to transfers somehow encompass avoidable obligations.  The Ninth Circuit held in Wolkowitz, 527 F.3d at 971, that there is a distinction between claims brought based on "a transfer of assets" and those based on "obligation[s] under a performance guaranty."

Accordingly, because they were not included in the proof of claim, the Guaranty claims are DISMISSED.  The Trustee may attempt to re-plead these claims only upon a showing that they have been included in a timely proof of claim – as opposed to the February 10, 2010 proof of claim attached to her Opposition.[11]

### b.  Failure to State a Claim

The FDIC further argues that 12 U.S.C. § 1828(u) bars the FAC's claims for "recovery" based on the avoidance of the Commitment and Guaranty.  See MTD at 11.  This is also correct: that section bars claims "for the return of assets" or "for monetary damages or other legal or equitable relief" when there is a "direction issued in writing . . . to increase its capital."  See 12 U.S.C. § 1828(u).[12]  Counts X and XIV expressly seek such relief.  See FAC ¶¶ 301, 319.  Accordingly, even had those claims been exhausted, they would nonetheless be dismissed to the extent they seek "recovery."[13]

The Court rejects the FDIC's additional arguments that the Trustee fails to state a claim because "federal banking law required the holding company to provide this guaranty as a condition to regulators' acceptance of UCB's capital restoration plan," MTD at 11 (citing

---

[11] The Court does not reach the FDIC's argument that any such claims do not relate back to the Trustee's original Complaint.  See Reply (dkt. 101) at 13.

[12] The Trustee does not dispute that, by September 24, 2009, there was a direction in writing to increase capital.  See Opp'n at 12.

[13] The Trustee makes a cursory argument that the FDIC has consented to her claims by asserting claims in UCBH's bankruptcy proceeding.  See Opp'n at 18 (citing In re Parker N. Am. Corp., 24 F.3d 1145, 1152 (9th Cir. 1994) ("bankruptcy courts should exercise jurisdiction over preference actions when the RTC files a claim in the bankruptcy proceedings.")).  But (1) this is not bankruptcy court; and (2) the FDIC represents that it "expressly reserved its subject matter defense in that protective proof of claim."  See Reply at 12 n.6.

1    12 U.S.C. § 1831o(e)(2)(C)(ii)), or because they are asserted "against 'the FDIC' without

2    specifying which legal capacity she is referring to," id. (citing <u>Bullion Servs., Inc. v. Valley</u>

3    <u>State Bank</u>, 50 F.3d 705, 709 (9th Cir. 1995)).

4                    **3.      Conclusion as to the New Claims**

5            The Court DISMISSES with prejudice the FAC's second cause of action, for

6    Invalidity of the Consent Agreement and Order to Cease and Desist, based on lack of

7    jurisdiction, and DISMISSES the Commitment and Guaranty claims both for failure to

8    exhaust and to the extent that they seek recovery.

9    **IV.    CONCLUSION**

10           For the foregoing reasons, the Court GRANTS the Motion to Dismiss in full.  The

11   Trustee may file an amended complaint, if she wishes to do so, within <u>thirty days</u> of this

12   Order; of course, she may not re-plead claims that have been dismissed with prejudice.

13           **IT IS SO ORDERED.**

14

15   Dated: September 4, 2012                    _____
                                                 CHARLES  R. BREYER
16                                               UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California